[Civ. No. 2527. Third Appellate District.—November 23, 1922.]

## H. V. M. HALL et al., Respondents, v. R. N. MITCHELL, Appellant.

[1] RESCISSION — SALE OF NURSERY STOCK — MISREPRESENTATIONS — FINDINGS.—In an action for the rescission of a written contract for the sale of nursery stock on the ground of fraudulent representations, it is not sufficient to find that defendant "made untrue statements to plaintiffs regarding the number of dormant buds that would grow," etc., without finding what false statement or statements were made by defendant to plaintiffs. A general finding as to "all the material allegations" of the complaint and the answer must be entirely disregarded.

[2] ID.—TRUTH OF STATEMENT—KNOWLEDGE—INTENT—INDUCEMENT— —FINDINGS—JUDGMENT.—In such an action, if. there is no finding that any statement made by defendant was known by him to be untrue or that it was made with intent to deceive or to induce plaintiffs to rely upon it, the conclusion that the contract should be annulled by reason of misrepresentation is not warranted.

[3] ID.—DAMAGES—INSUFFICIENT FINDING.—In such an action, a finding that "plaintiffs are entitled to damages from defendant" is not a sufficient finding that plaintiffs were damaged or injured by the representation of defendant. A misrepresentation that does not result in injury to the innocent party cannot be the predicate for an action for the rescission of a contract, or for damages.

[4] ID.—NEGLIGENCE—FINDINGS—APPEAL—EVIDENCE.—On appeal from a judgment in favor of the plaintiff in an action for rescission of a written contract for the sale of nursery stock on the ground of fraudulent representations, the failure of the trial court to find on the special defense that any loss suffered by the plaintiffs was the result of negligence on their part in the care of the nursery cannot be availed of on appeal, where the evidence is not brought up.

[5] ID.—INTENT.TO DECEIVE—PLEADING.—In such an action, an allegation that the representation was made with intent to deceive is essential, but in setting forth this necessary element the plaintiff is not required to adopt any particular phraseology, although the simple and direct averment that the representation was made with such intent would remove any uncertainty.

[6] ID.—INDUCEMENT—PLEADING.—In an action for rescission of a written contract for the sale of nursery stock on the ground of fraudulent representations, the complaint should allege that the representations were made with intent to induce plaintiffs to enter into the contract.

[7] ID.—FUTURE GROWTH OF BUDS—NATURE OF REPRESENTATION.—
The representation by the seller of nursery stock that "sixty or
seventy per cent of the dormant buds (placed by him in the trees
comprising the stock) would grow," standing alone, is a mere
opinion upon which the buyers rely at their peril; but where such
budding was imperfectly done and this fact was intentionally con-
cealed from the buyers, who were unskilled in that business, and
who did not possess an equal opportunity of ascertaining the real
condition, and with this knowledge the seller had no reason to be-
lieve that the buds would grow as he represented, such representa-
tion, if made with intent to deceive and induce the buyers to
enter into the contract and upon which representation the buyers
relied, can be nullified in a court of equity.

[8] ID.—EXPRESSION OF OPINION—WHEN FRAUD.—The expression of
an opinion may amount to fraud where it is accompanied by active
misrepresentation or concealment, or where it relates to a subject
as to which the parties have no equal knowledge or means of
ascertaining the truth.

[9] ID.—STATEMENT OF OPINION—WHEN ACTIONABLE.—Where the state-
ment of the opinion is necessarily based upon a fact, or carries
such inference that it must be regarded as the statement of a
fact and is known to be false and made with intent to deceive,
it may be actionable.

APPEAL from a judgment of the Superior Court of
Stanislaus County. J. C. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

Hawkins & Hawkins for Appellant.

F. W. Reeder for Respondents.

BURNETT, J.—The action was brought to rescind, on
the ground of fraud, a written contract for the sale of
certain nursery stock, and the appeal is by the defendant
from the judgment upon the judgment-roll. Said written
contract provided:

"Agreement, made and dated at Waterford, California,
November 2, 1920, between Robert Mitchell of Ceres, Calif.,
hereinafter described as the seller, and H. V. M. Hall, of
Waterford, California, hereinafter described as the pur-
chaser.

"Witness, that the seller agrees to sell and convey, and
the purchaser agrees to purchase all that block of nursery

stock grown and now standing on the northerly portion of the property owned and farmed by J. T. McComic at Waterford, Calif.

"The price is ten thousand dollars ($10,000.00) payable as follows

"Three thousand five hundred dollars ($3,500.00) on the signing of this contract, the receipt of which is hereby acknowledged.

"Fifteen hundred dollars ($1,500.00) on or before March first, 1921.

"Five thousand dollars ($5,000.00) on or before March 1st, 1922, with interest on this deferred payment at six per cent from the date of this agreement until March 1st, 1922, payable at that time.

"The seller agrees to remove strings now on part of the within described stock, and to furnish to the purchaser a correct and true list of all varieties and their exact location.

"The seller hereby guarantees that title to the stock described within is free from liens, or other debts or incumbrances.

"The stipulations aforesaid are to apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties."

After an allegation of the execution of said contract the complaint proceeds:

"That a few days before the entering into of said contract the exact dates being to plaintiffs unknown, defendant made to plaintiffs the following false, fraudulent and untrue statements: That defendant stated to plaintiffs that he had placed fifty-two thousand (52,000) dormant buds in the trees comprising the nursery stock mentioned in before mentioned contracts and that plaintiffs could depend upon sixty to seventy per cent of said dormant buds growing and producing trees.

"That plaintiffs relying upon the representations of defendant as to the amount of dormant buds which would grow and produce trees as represented by defendant agreed to and did enter into a contract with defendant in writing as hereinbefore set forth and agreed to pay said defendant the sum of ten thousand dollars therefor.

"That plaintiffs had no way of knowing whether or not the representations were true and were compelled to rely and

did rely upon the representations made by defendant as to the amount of buds that would grow and produce trees.

"That plaintiffs are not nurserymen by profession, but that defendant is a man who has been engaged in the nursery business for a number of years and is fully conversant with said business, which plaintiffs knew at the time of entering into said contract, and because of this knowledge plaintiffs. gave a greater degree of reliance upon the statements made by defendant than they would otherwise have done.

"That the statement made by defendant to plaintiffs that they could depend upon sixty or seventy per cent of the dormant buds of said nursery stock growing and producing trees was false, fraudulent and untrue, which defendant well knew, but plaintiffs did not know and had no way of determining at the time of the entering into of said contract.

"That defendant well knew, as an experienced nurseryman that at the time of entering into said contract and at the time of making the said statement to plaintiffs that sixty or seventy per cent of the dormant buds would not grow because of the nature of the budding and which the defendant had done in said nursery which was wholly within the knowledge of defendant.

"That in truth and in fact there were only thirty per cent of the dormant buds placed in said nursery by defendant that grew and produced trees.

"That by reason of the false, fraudulent and untrue statement of defendant to plaintiffs that sixty or seventy per cent of said dormant buds would grow and produce trees plaintiffs were damaged in the following amounts and did pay to defendant on the 2d day of November 1920, the sum of three thousand five hundred dollars."

Then follows an enumeration of the other losses claimed to have been sustained, the allegation of a written demand for rescission and restoration and that "plaintiffs have carried out the terms and conditions of said contract in every particular."

The answer put in issue every material allegation of the complaint and set up an affirmative defense of ratification of the contract, and laches in the failure of plaintiffs to rescind the contract promptly after ascertaining what proportion of said buds would grow. It was also averred "that if a due

proportion of the said nursery stock failed to grow, it was because the plaintiffs failed to properly care for the same in an approved manner of horticulture, and for their failure to so care for the said nursery stock, a large percentage of the same failed to grow."

The court found:

"That all the material allegations of plaintiffs' complaint are true.

"That the material allegations as to the denial of fraud and misrepresentation in defendant's answer are untrue.

"That plaintiffs, H. V. M. Hall and Caroline Rice Dyer, are inexperienced in the nursery business.

"That defendant, R. N. Mitchell, is an experienced nurseryman.

"That defendant R. N. Mitchell, made false, fraudulent and untrue statements to plaintiffs regarding the number of dormant buds that would grow at the time and before the sale of said nursery to plaintiffs.

"That plaintiffs H. V. M. Hall and Caroline Rice Dyer, relied upon the statements made by defendant, R. N. Mitchell, and so relying purchased said nursery from defendant.

"That because of the delay of notice of rescission of contract served by plaintiffs, H. V. M. Hall and Caroline Rice Dyer, on defendant, R. N. Mitchell, said contract of purchase cannot be rescinded by plaintiffs against the defendant.

"That plaintiffs, H. V. M. Hall and Caroline Rice Dyer, are entitled to damages from defendant, R. N. Mitchell, because of the misrepresentations and fraud of defendant in the sale of said nursery to plaintiffs by defendant."

Among the conclusions of law is also this finding of fact:

"That H. V. M. Hall and Caroline Rice Dyer, plaintiffs, have already paid to the defendant R. N. Mitchell, all that nursery stock mentioned in said contract of purchase is reasonably worth."

[1] It is apparent that the findings as to "all the material allegations," etc., must be entirely disregarded. (*Stampfli* v. *Stampfli,* 53 Cal. App. 126 [199 Pac. 829]; *Krug* v. *F. A. Lux Brewing Co.,* 129 Cal. 322 [61 Pac. 1125]; *Holt Mfg. Co.* v. *Collins,* 154 Cal. 265 [97 Pac. 516].)

We must look to the other findings to ascertain whether

there is sufficient basis for the support of the judgment, and we are satisfied that they fall short of meeting the requirement of the law. The court does not find what false statement or statements were made by defendant to plaintiffs. It is not sufficient to declare that he made "untrue statements to plaintiffs regarding the number of dormant buds that would grow," etc. Such a vague and indefinite finding as to the supposed misrepresentations cannot be deemed of any value. If it had been qualified by the phrase "as alleged in the complaint" or some equivalent expression, the situation would be different. But the vital consideration of what representation was made is left entirely to surmise and conjecture. It should have been exhibited with at least reasonable certainty so that the court could determine whether it were of a character to justify the conduct of plaintiffs in relying upon the statement.

[2] Again, there is no finding that any statement made by defendant was known by him to be untrue or that it was made with intent to deceive or to induce plaintiffs to rely upon it. These are vital elements in a case of actual fraud, and manifestly they should appear in the findings in order to warrant a conclusion that the contract should be annulled by reason of misrepresentation. (20 Cyc. 13; 26 Corpus Juris, 1062.)

[3] There should have been also a specific finding that plaintiffs were damaged or injured by the misrepresentation of defendant. That "plaintiffs are entitled to damages from defendant" is not a sufficient finding of fact in that regard. Of course, any misrepresentation that does not result in injury to the innocent party cannot be the predicate for an action such as this.

[4] There was no finding as to the special defense set up in the answer that any loss suffered by plaintiffs was the result of negligence on their part in the care of the nursery, but of this no complaint can be made since the evidence is not brought up. We must assume that the showing made would not warrant, in that respect, a finding in favor of appellant.

[5] In view of the necessity for a reconsideration of the case by the trial court it becomes advisable to notice appellant's criticisms of the complaint. One is that it is not alleged that any misrepresentation was made with intent to

deceive. Authorities are cited to the effect that such an allegation is material. Of course, there can be no actual fraud without such evil intent. But, manifestly, in setting forth this necessary element the pleader is not required to adopt any particular phraseology, although the simple and direct averment that the representation was made with such intent would relieve the situation of any uncertainty in that respect.

[6]. It is also claimed that there is a failure to allege that the misrepresentation was made with the intent to induce plaintiffs to enter into the contract. It would have been a simple matter to set this forth so as to avoid just criticism. It is to be observed that section 1572 of the Civil Code, in defining *actual fraud,* provides that it "consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party *thereto, or to induce him to enter into the contract,*" etc. In this particular case no more important element could be suggested, and it is unfortunate that plaintiffs were not more careful to reveal it more clearly.

Appellant seems to attach most importance to the claim that the so-called misrepresentation consists simply in the expression of an opinion and not the statement of a fact, and therefore it could not constitute actionable fraud. He insists that "a vendor has the right to free expression of opinion as to what will or will not happen in the future in relation to the sale of the property under consideration and such statements will never constitute a ground for actionable fraud." The familiar principle is stated in 12 R. C. L. 245, as follows:

"Generally, therefore, fraud can not be predicated upon the mere expression of an opinion which is understood to be only such or can not reasonably be understood to be anything else, nor upon representations in regard to matters of estimate or judgment. The person to whom such statements are made has no right to rely upon them, and does so at his peril, nor can it be supposed that they influenced his judgment.".

However, as stated by the same and other authorities, there are exceptions to these general rules "growing out of the need of preventing the successful perpetration of fraud," but we need not specify them. Moreover, it is true

that "there is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact, but each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." (12 R. C. L. 247.)

Illustrations of the application of the principle, as thus stated, are given in the text; indeed, the books contain many of them, but in this connection we notice specifically only the California cases cited by appellant, holding that a mere opinion was involved.

In *Rendell* v. *Scott*, 70 Cal. 514 [11 Pac. 779], it was said:

"It was certainly a matter of opinion when the plaintiff stated that the land was the best ranch in Ione Valley, and was very rich and productive, and would produce fifty bushels of wheat to the acre; that a portion was good alfalfa land, and that another portion was rich in mineral deposits."

It was held that, since there was nothing in the pleadings to exclude "the idea of personal inspection by the purchaser" he must be presumed to have exercised his own judgment.

In *Nounnan* v. *Sutter County Land Co.*, 81 Cal. 1 [6 L. R. A. 219, 22 Pac. 515], it was held that the representations made by the defendant to the plaintiffs "as to the nature of the soil to be excavated, and the number of cubic yards in the levees which they contracted to construct, were, mere expressions of opinion with reference to matters equally within the power of both of the parties to ascertain and determine" and it was held further that the contract itself showed that the plaintiffs did not rely upon these representations.

In *Holton* v. *Noble*, 83 Cal. 7 [23 Pac. 58], it appears that plaintiff represented that the land sown in alfalfa would produce at least eight tons of hay to the acre, that he also represented that the forty acres of grape-vines on the land would produce at least from a ton to two tons of raisins per acre. The supreme court said:

"The alleged representations of the plaintiff as to the amount that the alfalfa and grape-vines would produce were clearly matter of opinion, and cannot be regarded as fraudulent."

*Lee* v. *McClelland,* 120 Cal. 147 [52 Pac. 300], is to the same effect. Therein the defendant testified: "He (referring to the plaintiff) said it was fine orange land, and I could put out oranges and go east in the summer and come back and I would get a crop of oranges; and on the strength of that statement I purchased the land." Said the supreme court: "It is quite obvious that such statements made by a seller of land, even admittedly to induce a purchase, can not be made the predicate of false or fraudulent representations such as will avoid a contract of sale. They are the exaggerated, and it may be the reckless, declarations of an eager tradesman holding out the golden promise of profit to induce a sale, but after all they are but the expressions of the vendor's opinion, actual or pretended, upon which the purchaser will rely at his peril."

It may be added that the most recent decision upon the subject by an appellate court of this state is presented by *French* v. *Freeman,* 39 Cal. App. Dec. 405, wherein it was held that the representations that certain land was suitable for raising pears and that it was the finest sediment soil "were merely expressions of opinion" which could not be regarded as fraudulent.

[7] Herein, the representation was that "sixty or seventy per cent of the dormant buds would grow." This—so appellant claims—could be nothing more than the opinion of the seller; that, manifestly, he could not know that such would be the result in the future, nor could anyone of ordinary understanding believe that it was more than the expression of an opinion. It is not at all unlike—so it is said—the representation in the Rendell case, *supra,* that the land would produce fifty bushels of wheat per acre, or in the Holton case that the land sown in alfalfa would produce eight tons to the acre. Standing alone it may be admitted that this would be a mere opinion upon which plaintiffs would rely at their peril. It must be stated, though, that there is a defective attempt herein to couple with this opinion the concealment of a material fact, which necessarily would affect the development and productivity of

the buds. This is suggested in the allegation that defendant "well knew, as an experienced nurseryman, . . . that sixty to seventy per cent of the dormant buds would not grow *because of the nature of the budding and which the defendant had done in said nursery* which was wholly within the knowledge of defendant." If the budding was imperfectly done and this fact was intentionally concealed from plaintiffs, who were unskilled in that business, and who did not possess an equal opportunity of ascertaining the real condition, and with this knowledge defendant had no reason to believe that the buds would grow as he represented, then it could hardly be disputed that such representation, if made with the intent to deceive and induce plaintiffs to enter into the contract and upon which representation plaintiffs relied, could be nullified in a court of equity. Under such circumstances the representation would be equivalent to the statement of a fact for which the party making it would be held to accountability. **[8]** The expression of an opinion may amount to fraud where it is accompanied by active misrepresentation or concealment (*Gray* v. *Richmond Bicycle Co.*, 167 N. Y. 348 [82 Am. St. Rep. 720, 60 N. E. 663]), or where it relates to a subject as to which the parties have not equal knowledge or means of ascertaining the truth. (*Davis* v. *Lee*, 52 Wash. 330 [132 Am. St. Rep. 679, 100 Pac. 752].)

**[9]** Where the statement of the opinion is necessarily based upon a fact, or carries such inference that it must be regarded as the statement of a fact and is known to be false and made with intent to deceive, it may be actionable. (*Olson* v. *Oregon Water Power etc. Co.*, 52 Or. 343 [20 L. R. A. (N. S.) 915, 96 Pac. 1095, 97 Pac. 538].)

In *Wendell* v. *Ozark Orchard Co.* (Mo. App.), 200 S. W. 747, it was held that representations as to the productiveness of a peach orchard and the enhanced value of the land because of its being fruit land should be regarded as representative of existing conditions and fraudulent because made by one having superior knowledge based upon past experience of himself and others and sufficient to support allegations of fraud.

In *Stonemets* v. *Head*, 248 Mo. 248 [154 S. W. 108], it is said:

"Courts generally recognize that where parties do not stand on an equal footing of opportunity and knowledge a positive assertion of a matter, which stated in another form, might be a mere opinion, may when false and fraudulent be actionable if the statement was a material inducement to the trade or sale. So a statement of an opinion under like circumstances when in fact the party has no such opinion, or has a contrary opinion, may become a statement of a material fact, to wit, the fact that an opinion exists."

The subject is clearly set forth in 2 Pomeroy's Equity Jurisprudence, third edition, section 878, to which we also refer for an instructive discussion of the question.

We think we discern in the complaint an attempt—though imperfectly stated—to set forth a situation within the contemplation of such recognizable fraud. The complaint is defective in the respects indicated, but considering the whole pleading, we think it cannot be said that there is such entire omission of any material element of fraud as to require the action to be dismissed. We must assume that the evidence of a complete cause of action was received without objection and thus said defects were without prejudice. However, if it should be amended the various elements to which we have referred should be set forth more explicitly.

We think the judgment should be reversed and the parties permitted to amend their pleadings, if so advised. It is so ordered.

Hart, J., and Finch, P. J., concurred.